UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BILLY D. FOWLER,

    Petitioner,

v.

MAGGIE MILLER-STOUT,

    Respondent.

Case No. C06-5620FDB

SECOND REPORT AND RECOMMENDATION

**NOTED FOR:**
**April 27, 2007**

This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.

**INTRODUCTION AND DISCUSSION**

Petitioner challenges his 2004, Clark County convictions for two counts of second degree burglary and two counts of first degree theft. (Dkt. # 10 page 2). He was sentenced to one hundred and two months. When the court first considered this petition it contained two unexhausted claims and two exhausted claims. Thus, the petition was a mixed petition. A Report and Recommendation to dismiss without prejudice was entered. Petitioner then moved to dismiss

REPORT AND RECOMMENDATION- 1

his unexhausted claims and the petition has been referred back to this court for consideration of the two exhausted claims. Those claims involve the state not keeping a video tape from the burglary of the pawnshop, and sufficiency of the evidence. Having reviewed the file the court concludes this petition is without merit and should be dismissed **WITH PREJUDICE.**

## FACTS

The Washington State Court of Appeals summarized the facts as follows:

> Custom Cuts, a hair salon, and Easy Pawn, a pawnshop, share a common wall in a strip mall in Vancouver, Washington. On October 26, 2003, between 2:00 P.M. and 4:00 P.M., Jean Hudson and Norma Page arrived to clean at Custom Cuts just as they had every week for approximately two years. Hudson would usually park in a space just in front of the windows of Custom Cuts, but on this day an aluminum extension ladder had been placed in that parking space leading up to the roof of the building. The ladder was leaning against the building and across the window of Custom Cuts. She parked in another parking space.
>
> When Hudson and Page entered Custom Cuts to begin cleaning, they heard pounding on the roof. As Hudson was sweeping near the window, she saw movement out of the corner of her eye. She looked up as a "gentleman was coming down the ladder facing [her]." 2 Report of Proceedings (RP) at 87. He did not look up and did not look into the window at her; "[they did not] make eye contact." 2 RP at 88. The man then got off the ladder and walked toward the door and out of Hudson's sight. Hudson assumed that he was the owner of building doing some work on the roof. She described the man as "gray haired" and "kinda nice looking as far as somebody that could own a building." 2 RP at 90. When Hudson left Custom Cuts, she locked the deadbolt and the door.
>
> At approximately 7:30 P.M. that evening, Robert Moline, the owner of Easy Pawn, received a telephone call from his alarm company, informing him that a perimeter and motion alarm at the pawnshop had been triggered. Moline arrived at Easy Pawn within 10 minutes of receiving the call. Moline went through the front door and walked through the center aisle to the back of the shop. He checked the area where the perimeter and motion alarm had sounded and checked the back door. Not seeing anything out of the ordinary in these areas, Moline assumed that it was a false alarm, so he locked the door, set the alarm, and left.
>
> The next morning, Jason Matilla, an employee at Easy Pawn, discovered that jewelry had been taken from a showcase in Easy Pawn. He called the sheriff's office. Deputy Kevin McVicker responded. Matilla showed Deputy McVicker a small hole in the wall at the back of the shop. Deputy McVicker determined that Easy Pawn had been entered through a hole in the wall that separated Easy Pawn from Custom Cuts. Deputy McVicker then went around the outside of the building to check the exterior windows of Custom Cuts. Looking through the window, Deputy McVicker saw a hole had been cut into the roof over Custom Cuts. Deputy McVicker found a broken Sawzall Blade next to the hole in the roof. McVicker also noted that some dirt on top of the roof had been disrupted, but he found no discernable footprints or shoe patterns. An inventory taken that night revealed that jewelry with an approximate value of $26,000 had been taken

REPORT AND RECOMMENDATION- 2

from Easy Pawn.

Matilla contacted Carol Baker, the owner of Custom Cuts, to inform her of the burglary. Baker noticed that the drawers of her salon had been rifled through. When Deputy McVicker finished his investigation and left Custom Cuts, Baker called Hudson and Page to ask them to clean the salon again. Hudson and Page told Baker that they saw someone at the salon the previous day coming down a ladder from the roof. Baker called Deputy McVicker to tell him what Hudson and Page told her. While they were cleaning they discovered a used cigarette on the bathroom floor. They told Baker that the cigarette had not been there when they left the day before. Deputy McVicker returned to Custom Cuts to collect the Basic Brand cigarette that was found during cleanup. An inventory of Custom Cuts revealed that shears, a scissors case, clippers, jewelry, and a sculpture with a combined value of approximately $3,000 were missing from the salon.

Deputy James Naramore of the Clark County Sheriff's office contacted Fowler on November 8, 2003. During the contact, Fowler was near a 1997 Ford pickup truck. Deputy Naramore described the color of the truck as "a light turquoise, what somebody could construe as a blue-green color, very light," and went on to say that "[i]t's a 1997, so it's a newer model Ford pickup." 2 RP at 145. Deputy Naramore determined that Fowler was the registered owner of the truck. He also reported that he saw in the truck an open and unopened pack of Basic Brand cigarettes, a Sawzall, an extension ladder, and used Sawzall blades.

On January 14, 2004, Detective Charles Kerr of the Clark County Sheriff's Office asked Hudson and Page to look at a photographic montage. Hudson quickly identified Fowler as the man she saw at Custom Cuts, stating, "That's the one." 2 RP at 94. At trial, when presented with the montage, Hudson stated that she could not be sure, but she thought that it was the same set of photographs that were shown to her at her home. Page was unable to identify anyone from the montage.

On February 4, 2004, the State charged Fowler with second degree burglary and first degree theft of Easy Pawn and second degree burglary and first degree theft of Custom Cuts. Hudson, Page, Matilla, Baker, Deputy McVicker, Deputy Naramore, and Detective Kerr testified as described above.

> Deputy McVicker also testified that Hudson had described the man she saw coming down the ladder as being between thirty and forty years old, business type looking. He had short graying hair, which was neatly trimmed and dressed in casual clothes.
>
> She said that he seemed to be somewhat tall, but had a slight build.

2RP at 59

When the State asked if he had spoken with Page, Deputy McVicker stated:

> Yes. She– she didn't think that she could give me any additional information from what her daughter had given me, although when asked if they had seen any vehicles parked in the area, Mrs. Page was the one that told me that she had noticed a blue, neat, normal-sized, she described it as normal-sized pickup parked it would be north side of the salon near Vancouver Glass.

REPORT AND RECOMMENDATION- 3

>       2 RP at 59-60. He testified that Page did not indicate if the truck was new or old.
>
>       Page testified that she recalled seeing a newer, small, light blue pickup truck parked around the corner from Custom Cuts in front of the glass shop. On cross-examination, Fowler's trial counsel asked Page if the truck was "robin-egg blue," and she responded that it was "[j]ust a real pretty light blue, yes." 2 RP at 109. She could not remember telling Deputy McVicker about the truck, but thought that she could have. She also stated she thought the person she saw on the roof of Custom Cuts was a "younger person." 2 RP at 109.
>
>       The jury found Fowler guilty on all counts. After finding that Fowler had an offender score of 24, the trial court imposed an exceptional sentence of two consecutive 51-month sentences, finding Fowler should not receive the "benefit of any free crimes as his offender score is greater than 9 on the multiple offenses." Clerk's Papers (CP) at 122.

(Dkt. # 11, exhibit 3, pages 2 to 5).

## **PROCEDURAL HISTORY**

Petitioner filed a direct appeal and argued:

1. The trial court denied the defendant his right to due process under Washington Constitution, Article 1, § 3, and under United States Constitution, Fourteenth Amendment, When it entered judgments against him for two counts of second degree burglary and two counts of first degree theft because the state failed to present substantial evidence on these charges.

2. Trial counsel's failure to object to the presentation of inadmissible hearsay, inadmissible opinion evidence and inadmissible evidence that the defendant had committed other crimes denied the defendant his right to effective assistance of counsel under Washington State Constitution, Article 1 § 22 and United States Constitution, Sixth Amendment.

3. The trial court erred when it imposed an exceptional sentence based upon its incorrect belief that the defendant's offender score was 24 points because the state failed to prove the defendants prior convictions.

(Dkt. # 11, exhibit 4). In a Statement of Additional grounds petitioner raised the following issues:

1. Ineffective assistance of counsel for failing to suppress the photo montage.

2. The police erred when they failed to preserve a video tape of the jewelry store crime.

(Dkt. # 11, exhibit 5). The Washington State Court of Appeals upheld the convictions, but remanded for re-sentencing (Dkt. # 11, exhibit 3).

REPORT AND RECOMMENDATION- 4

Petitioner filed a motion for discretionary review regarding the conviction and argued:

1. Did the Court of Appeals, Chief Judge err by not applying the Harmless-Error Analysis during their earlier review?

2. Did the Court of Appeals over exaggerate the actual facts in this case when it applied the Sufficiency of Evidence test?

3. Did a **Brady** violation occur?

(Dkt. # 11, exhibit 8). Petitioner argues his first issue in terms of a Fourteenth Amendment due process violation as there was a lack of evidence (Dkt. # 11, exhibit 8). Review was denied September 6, 2006 (Dkt. #11, exhibit 9).

Petitioner filed the federal petition now before the court and agues:

1. Failure to preserve evidence: The trial court violated the Petitioner's rights under the Sixth and Fourteenth Amendments when it denied his motion for continuance to review a surveillance videotape to determine if it had exculpatory value.

2. Insufficient evidence: The trial court violated the Petitioner's rights under the Sixth and Fourteenth Amendments when it entered judgments against the Petitioner for two counts of second degree burglary and two counts of first degree theft, where the state failed to present substantial evidence on these charges.

3. Defective identification procedure: The trial court violated the Petitioner's rights under the Fourth and Fourteenth Amendments when it denied his motion to suppress the evidence.

4. Ineffective Assistance: The Petitioner's rights under the Sixth and Fourteenth Amendments were violated by ineffective assistance at trial, where counsel failed to object throughout the entire trial.

(Dkt. # 1).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact

REPORT AND RECOMMENDATION- 5

finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## **DISCUSSION**

A. <u>Failure to maintain the video tape</u>.

The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is material if it might have affected the outcome at trial. United

REPORT AND RECOMMENDATION- 6

States v. Agurs, 427 U.S. 97, 104 (1976).  The exculpatory nature of the evidence must have been apparent before the evidence was destroyed.  California v. Trombetta, 467 U.S. 479 (1984).  Due process does not require the State to use a particular scientific test as an investigative tool.  Arizona v. Youngblood, 488 U.S. 51 (1988).  Further, unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.  Arizona v. Youngblood, 488 U.S. 51 (1988).

Here, detective McVicker testified he viewed the video tape and did not take it into evidence because the video tape does not show the "suspect or suspects." He states:

> [A]ll you can see where these-- where the jewelry was, they were laying on top of a towel or a --a mat or cloth mat of some type, and you can see on the video that the whole cloth is being pulled and out of view of the video itself."

(Dkt. # 11, Exhibit 12, pages 69 and 70).

Plaintiff has failed to show any violation of a duty or right owed to him.  The Washington State Court of Appeals found no Brady violation  because plaintiff failed to show bad faith and the evidence in question was, at best, only potentially exculpatory  (Dkt. # 3, pages 11 and 12).  This court concurs.  Petitioner's first issue is without merit.

      B.     <u>Sufficiency of the Evidence</u>.

Evidence is sufficient to support a criminal conviction if the record reasonably supports a finding of guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 320 (1979).  The question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Id., citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972).

In Washington:

> (1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle or a dwelling.
>
> (2) Burglary in the second degree is a class B felony.

See, RCW 9A.52.030

REPORT AND RECOMMENDATION- 7

In Washington:

(1) "Theft" means:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or

(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or

(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services.

See, RCW 9A.56.020. First degree theft involves the taking of property with a value of more than $1500. See, RCW 9A.56.030 (1)(a).

The Washington Court of Appeals considered the sufficiency of the evidence in this case and held:

> Fowler contends that the State's evidence is insufficient to prove him guilty because there is no direct evidence that he committed the crimes charged and because the State's evidence shows only "a number of questionable, minor coincidences, including the fact that the defendant owned a Saws-all [sic], had an extension ladder, and had a pack of 'Basic' brand cigarettes on the passenger seat of his pickup." Br. of Appellant at 17.
>
> Fowler relies on *State v Q.D.,* 102 Wn.2d 19, 685 P.2d 557 (1984), and *State v. Mace,* 97 Wn.2d 840, 650 P.2d 217 (1982), but that reliance is misplaced. Those cases hold that proof of possession of stolen property, unless accompanied by other evidence of guilt, is not prima facie evidence of burglary. Fowler was not found in possession of any stolen property. The State's case was based on other evidence, as addressed below.
>
> Circumstantial evidence alone may be sufficient if it permits a jury to find beyond a reasonable doubt that the defendant committed the elements of the crime charged. *State v. Israel*, 113 Wn. App. 243, 269, 54 P.3d 1218 (2002), *review denied*, 149 Wn.2d 1013 (2003). Taking the evidence in the light most favorable to the State, Hudson saw Fowler climbing down an extension ladder from the roof above Easy Pawn and Custom Cuts. Page identified a truck she saw near Custom Cuts as a newer, small, light blue pickup truck. Police found used Sawzall blades near the hole cut in the roof. A Basic Brand Cigarette was found that had not been present when Custom Cuts was cleaned the day before. Fowler was the registered owner of a truck matching Page's description. When Deputy Naramore contacted Fowler less than two weeks after the burglaries, Fowler's truck contained an extension ladder, a Sawzall with manipulated extension cord, used Sawzall blades, and Basic Brand cigarettes. A rational trier of fact could find, based on this evidence, that Fowler committed the burglaries and thefts at Easy Pawn and Custom Cuts. The evidence was sufficient.

REPORT AND RECOMMENDATION- 8

(Dkt. # 11, Exhibit 3 page 6).  The circumstantial evidence in this case allowed the jury to find every element of the charged offenses.  The Washington State Court of Appeals decision in this case is not an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  This petition is without merit and should be **DISMISSED WITH PREJUDICE**.

### CONCLUSION

Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH PREJUDICE.**  A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 27, 2007** as noted in the caption.

Dated this 27 day of March, 2007.

*/S/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION- 9